KRAVITCH, Circuit Judge.
At issue in these two consolidated cases are identical claims of truth-in-lending vio *462 lations. We first hold that a Chapter XIII trustee is authorized to bring a truth-in-lending claim against a creditor on behalf of the wage earner. Concluding that a truth-in-lending violation was proved, we reverse the district court’s ruling in favor of appellee Trust Company of Columbus.
I. Facts
The disputed causes of action arose out of separate promissory notes executed by Weaver and Adams in favor of the Trust Company of Columbus. The Adams note was dated August 3,1977; the Weaver note November 18, 1977. Relevant to this action, each note contained two errors on the truth-in-lending disclosure: (1) a $7.50 charge was designated only with the identification “C.A.”; (2) the charge so characterized was not included in the finance charge. Rather, the $7.50 amount was simply added into the total payments disclosure.[1]
On January 12,1978, appellee sent correction letters to both Adams and Weaver. Each letter was identified as a Truth-in-Lending Correction Disclosure[2] and simply defined the designation “C.A.” as Collateral Appraisal. The letter was silent as to whether the charge should have been included in the finance charge. Moreover, the letter did not notify the borrower that the $7.50 charge would not have to be paid.[3]
[I] Subsequently, both borrowers filed Chapter XIII proceedings in bankruptcy court. In each case appellee submitted a claim based upon the note. In each case the trustee countered with a charge of truth-in-lending violations.[4] The district court affirmed the bankruptcy court’s ruling that although the truth-in-lending disclosure form on each note inadequately described the collateral appraisal charge for the purpose of the Truth-in-Lending Act, 15 U.S.C. § 1606 et seq., the correction letter was adequate to correct the violation.
II. The Standing of the Trustee
The threshold issue is whether the Bankruptcy Act[5] authorizes a Chapter XIII trustee to bring a truth-in-lending claim on behalf of the wage earner against a creditor.[6] This court has recently held in *463 the context of straight bankruptcy that a truth-in-lending claim is “property” of the debtor which passes to the trustee under section 70(a) of the Bankruptcy Act (11 U.S.C. § 110(a)). Matter of Wood, slip op. 8754 (5th Cir. 1980).[7] Whether a Chapter XIII trustee is a proper party to bring a truth-in-lending claim, however, is apparently a question of first impression in the circuit courts.[8]
Chapter XIII of the Bankruptcy Act permits a wage earner to pay his debts in full out of his future earnings. Unlike straight bankruptcy, where the debtor’s nonexempt assets are distributed to creditors and the debts are thereby extinguished, the debtor under Chapter XIII retains his assets, and the creditors are paid solely out of future earnings.[9] As the Supreme Court has stated:
Congress clearly intended to encourage wage earners to pay their debts in full, rather than to go into straight bankruptcy or composition, by offering two inducements: (1) avoidance of an adjudication of bankruptcy with its attendant stigma; and, at the same time, (2) temporary freedom during the extension from garnishments, attachments and other harassment by creditors.
Perry v. Commerce Loan Co., 383 U.S. 392, 395, 86 S.Ct. 852, 854, 15 L.Ed.2d 827 (1966).
Appellee concedes that a trustee in straight bankruptcy is authorized to bring a truth-in-lending claim on behalf of the debtor; he argues, however, that the differences between Chapter XIII and straight bankruptcy compel a different result here. In straight bankruptcy the trustee obtains title to the debtor’s property and liquidates the estate for the benefit of the creditors. The trustee’s powers encompass the right to institute actions to collect debts owed to the debtor and to distribute the proceeds to the creditors. By contrast, under Chapter XIII title to the debtor’s property vests in the trustee upon adjudication, section 70(a) of the Act (11 U.S.C. § 110(a)), but revests in the debtor upon confirmation of the plan, section 70(i) (11 U.S.C. § 110(i)). The trustee does not liquidate the debtor’s assets in order to pay the creditors; creditors are paid solely out of the debtor’s future earnings.
Appellee’s argument treats the truth-in— lending claim as an independent cause of action on behalf of the estate, unrelated to the creditor’s claim against the wage earner. We reject the implication that a truth-in-lending claim is unrelated to the underlying debt. In Plant v. Blazer Financial Services, Inc., 598 F.2d 1357 (5th Cir. 1979), in holding that suit on the underlying debt is a compulsory counterclaim in a truth-in-lending claim by the debtor, we reasoned that interests of judicial economy require *464 all issues relating to the transaction be adjudicated in a single action. Plant concluded: “the obvious interrelationship of the claims and rights of the parties, coupled with the common factual basis of the claims, demonstrates a logical relationship between the claim and counterclaim.” 598 F.2d at 1364.
The truth-in-lending claim in each of these cases was not brought to liquidate an asset of the debtor for the benefit of creditors; rather, this claim was brought against a creditor who had filed a claim against the wage earner and had been included in the plan. Thus, the truth-in-lending claim, is successful, would permit a deduction of the statutory penalty from the amount owed to appellee under the plan.[10] Under section 47(a)(8) of the Bankruptcy Act (11 U.S.C. § 75(a)(8)), a trustee is required to examine claims against the debtor and object to improper ones. Bankruptcy Rule 13-307(a) makes it clear that a Chapter XIII trustee’s duty to examine and object to claims is identical to that of the trustee in straight bankruptcy. In addition, Rule 13-607 authorizes the Chapter XIII trustee to commenee any action before any tribunal on behalf of the estate.[11]
Moreover, the duty of the Chapter XIII trustee to object to invalid claims does not cease upon confirmation of the wage earner plan. Appellee urges, however, that section 70(i) of the Bankruptcy Act divests the trustee of title to the truth-in-lending claim of the debtor. Section 70(i) provides that title to the debtor’s property, which passed to the trustee upon adjudication, re-vests in the debtor upon confirmation of the plan unless the order of confirmation specifies otherwise. This section reflects the fact that the trustee is empowered to pay creditors solely out of future earnings, and not out of any property which the wage earner may hold at the time of confirmation. Section 70(i) does not, however, relieve the trustee of his duty to examine and object to improper claims. Section 611 of the Bankruptcy Act grants to the bankruptcy court exclusive jurisdiction over the wage earner and his property until consummation of the entire proceeding, and under section 662 the trustee is not discharged until consummation of the plan.[12] In Mat *465 ter of Henderson, 577 F.2d 997 (5th Cir. 1978), we held that a Chapter XIII trustee could object to claims under the Georgia Industrial Loan Act from twelve to seventeen months after confirmation of the wage earner plan. We see no meaningful distinction between the invalidation by the trustee of the entire claim of a creditor and a truth-in-lending action which would only reduce the amount owed to a creditor under the plan.
It is true that Bankruptcy Rule 13-607 does not preclude the debtor from prosecuting an action when the trustee does not do so.[13] See Advisory Committee’s Note (reprinted at note 11 supra). As a practical matter, however, if the trustee is not permitted to bring the truth — in-lending action, the debtor often will be precluded by the one — year statute of limitations. By contrast, section 11(e) grants the trustee two years in which to bring an action on behalf of the estate on any claim against which the appropriate statute of limitations has not expired at the date of adjudication. In addition, because he must examine claims against the debtor, the trustee is more likely than the debtor to detect truth-in-lending violations. Congress intended to secure compliance with the Truth-in-Lending Act through private suits against creditors.[14] Permitting Chapter XIII trustees to bring truth-in-lending actions promotes this deterrent policy of the Act.
We conclude that the trustee was authorized to bring these truth-in-lending actions on behalf of the wage earners. Such a holding, we believe, is consistent with the language of Chapter XIII,[15] furthers the purposes of the Truth-in-Lending Act, and promotes judicial economy.
III. The Merits of the Truth-in-Lending Claims
The truth-in-lending statement at issue contained two separate violations of the Act. First, an item was inadequately described. Specifically, designation of the collateral appraisal fee as “C.A.” did not clearly disclose the nature of the charge.[16] Second, the appraisal charge should have been included in the finance charge.[17] This *466 is not a case in which a single error violates the Act in two different respects. Here, even if the collateral appraisal fee had been meaningfully described, the failure to include the charge in the amount financed or in the finance charge would have constituted a violation of the Act. Moreover, the two errors are relevant to distinct and different purposes underlying the Act: clarity of identification of items prevents customers from being misled concerning services for which they are paying; proper summation of the components of the finance charge permits the customer to compare lenders in order to choose the most advantageous debt contract. Because two distinct errors were made on the disclosure forms and the correction letters rectified only one of the errors, we REVERSE AND REMAND.

. On appeal appellant Weaver also contended that the disclosure on the Weaver note involving insurance was inadequate because the appellee failed to disclose that the debtor could choose an insurance carrier. This claim was not meaningfully presented and argued below and we therefore decline to consider the issue.

. The correction statement was sent to the debtor pursuant to 15 U.S.C.A. § 1640(b), which provides:
A creditor has no liability under this section for any failure to comply with any requirement imposed under this chapter or chapter 5, if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount or percentage rate actually disclosed.

. Because we hold that the letter failed to correct the underlying truth-in-lending violations, we need not reach the question whether a correction letter must notify the debtor that the incorrectly designated charge need not be paid. See 15 U.S.C. § 1640(b) supra.

. Although the bankruptcy court lacks summary jurisdiction over a truth-in-lending claim against a creditor without the creditor’s consent, failure to object constitutes a waiver. In re Bryant, 626 F.2d 492 (5th Cir. 1980); Matter of Garner, 556 F.2d 772 (5th Cir. 1977). Here, appellee having failed to object to exercise of summary jurisdiction by the bankruptcy court, any objection is deemed waived.

. Even though the Bankruptcy Act was repealed by the Act of Nov. 6, 1978, Pub.L. 95-598, 92 Stat. 2549 (codified at 11 U.S.C.A. § 101 et seq. (West 1979)), effective Oct. 1, 1979, a case commenced under the “old” Act is governed by the provisions of that Act. Act of Nov. 6, 1978, Pub.L. 95-598, § 403(a), 92 Stat. 2683 (codified at 11 U.S.C.A. § 101 et seq.).

. The standing of the trustee to bring these actions was neither argued nor decided in the courts below. Because standing is an element of the constitutional requirement of “case or controversy,” lack of standing deprives the court of subject matter jurisdiction. Therefore, objections to standing are never waived and must be raised by an appellate court sua sponte. Fairley v. Patterson, 493 F.2d 598 (5th Cir. 1974). After oral argument in these cases, the court instructed counsel to brief the merits of the standing issue and whether objection to *463 the trustee’s standing had been waived. In their briefs, both parties contended that the standing issue could not be waived and briefed the standing issue on the merits.

. In Wood the analysis focused on the nature of a truth-in-lending claim. Section 70(a)(5) of the Bankruptcy Act vests the trustee with title to the debtor’s property which the debtor “could by any means have transferred.” For purposes of the Bankruptcy Act, a cause of action is transferable if it would survive the death of the debtor. Wood, supra, slip op. at 8756. Because punitive causes of action do not survive the death of the debtor, whereas remedial damage actions do survive, the issue turned on whether a truth-in-lending claim should be characterized as punitive or remedial. Concluding that the purpose of the Truth-in-Lending Act is remedial, the court held that a truth-in-lending claim passes from a debtor to the trustee in bankruptcy. Wood is in accord with the other courts which have decided that precise issue. See Riggs v. Government Emp. Fin. Corp., 623 F.2d 68 (9th Cir. 1980); Murphy v. Household Finance Corp., 560 F.2d 206 (6th Cir. 1977); Porter v. Household Finance Corp., 385 F.Supp. 336 (S.D.Ohio 1974).

. Rounds v. Community Nat’I Bank, 454 F.Supp. 883 (N.D.Ill.1977) is the only reported decision on this issue. In that case the wage earner and the trustee together brought a truth-in-lending claim against a creditor. Concluding that the Chapter XIII trustee was the proper plaintiff to maintain the action, the court dismissed the wage earner as a party plaintiff.

. The new Bankruptcy Code, 11 U.S.C. § 1301 et seq., has expanded the availability of the Chapter XIII wage earner mechanism to self-employed debtors. 11 U.S.C. § 1304.

. Several state courts have permitted a truth-in-lending counterclaim as a recoupment or setoff to a suit by a creditor on the debt even where the Truth-in-Lending Act’s one-year statute of limitations has run. See cases collected in Plant v. Blazer, supra, at 1364 n.13.

. Rule 13-607 provides:

Prosecution and Defense of Proceedings by Trustee

The trustee may, with or without court approval, prosecute or enter his appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate, before any tribunal.
The Advisory Committee’s Note to Rule 13-607 states:
Rule 13-607, authorizing the trustee to prosecute or defend any pending action or proceeding by or against the debtor, or to commence and prosecute any action or proceeding in behalf of the estate, is derived from subdivisions (b), (c), and (e) of § 11 of the Act, but its application in some instances may be affected by § 70(i) of the Act, under which title to property revests in the debtor upon confirmation of a plan or at such later time as may be provided in the plan or the confirming order. The Rule, in any event, is not intended to preclude the debtor from prosecuting or defending when the trustee does not do so.
Appellee argues that the above language of the Advisory Committee indicates that confirmation of the plan forecloses the trustee’s right to commence these actions. We do not read the Advisory Committee’s Note to preclude the trustee from commencing any action after confirmation. The Committee’s language is that the application of Rule 13-607 “in some instances may be affected by § 70(i) of the Act.” (emphasis added). We interpret this language to mean that the trustee may not, for example, after confirmation institute an action to liquidate debts owed to the debtor for distribution to creditors. Such a suit would be contrary to the purposes of Chapter XIII and would be an instance where § 70(i) denies the trustee the right to bring the suit. The language “in some instances” makes clear, however, that there are other instances where the trustee may commence an action after confirmation.

. It is important to note the chronology of the confirmation of the plan. No secured claims had to be filed until the date of the first meeting, Rule 13-302(e)(1), and unsecured claims were timely if filed within six months following the first meeting, Rule 13-302(e)(2). Yet, in *465 these cases, the first meeting of creditors and the confirmation of the plan took place at one meeting. Obviously, no trustee could be expected to examine all claims thoroughly by the date of confirmation.

. Presumably if the wage earner were to bring a truth-in-lending claim in his own name, he must bring it in bankruptcy court. Section 611 provides that the bankruptcy court retains exclusive jurisdiction over the debtor and all of his property.

. As the Senate Report stated:
The enforcement of the bill would be accomplished largely through the institution of civil actions authorized under section 7 [15 U.S.C. § 1640] of the bill. Any creditor who fails to disclose the required information would be subject to a civil action with a penalty of twice the finance charge.... The committee has not recommended investigative or enforcement machinery at the Federal level, largely on the assumption that the civil penalty section will secure substantial compliance with the act.
S.Rep. No. 90-392, 90th Cong., 1st Sess. 9 (1967).

. There has been debate as to the extent of the responsibilities of the Chapter XIII trustee. See Tselikis, The Chapter XIII Trustee: “Trustee or Disbursing Agent?’’, 21 Me.L.Rev. 53 (1969). The new Code, however, leaves no doubt that a trustee under the new Chapter 13 is more than a mere disbursing agent. The language of 11 U.S.C. § 1302 expressly mandates for the Chapter 13 trustee nearly all of the duties of a liquidation trustee. As stated in Notes of the Committee on the Judiciary, Senate Report No. 95-989, U.S.Code Cong. & Admin.News 1978, p. 5787:
Subsection (b)(1) makes it clear that the chapter 13 trustee is no mere disbursing agent of the monies paid to him by the debtor under the plan [section 1322(a)(1)], by imposing upon him certain relevant duties of a liquidation trustee prescribed by section 704 of this title.
We consider the legislative intent concerning the new Chapter 13 to be evidence of a Congressional desire that the old Chapter XIII not be construed so as to render the trustee “a mere disbursing agent.”

. See 12 C.F.R. § 226.6.

. 12 C.F.R. § 226.4(a) provides in pertinent part:
(a) General rule. Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all *466 charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:
(4) Fee for an appraisal, investigation, or credit report.